UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD G. RADLINSKY,

                                        Plaintiff,

        v.                                                      3:05-CV-562
                                                                (NPM/GJD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

EUGENE D. FAUGHNAN, ESQ., Attorney for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Attorney for Defendant

GUSTAVE J. DIBIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable
David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(d).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on October 15,
2003.  (Administrative Transcript ("T.") at 55-58).  The application was denied
initially (T. 28-31), and a request was made for a hearing.  A hearing was held before
an Administrative Law Judge ("ALJ") on August 11, 2004.  (T. 224-242).  In a
decision dated September 9, 2004, the ALJ found that plaintiff was not disabled.  (T.
12-26).  The ALJ's decision became the final decision of the Commissioner when the
Appeals Council denied plaintiff's request for review on March 2, 2005.  (T. 4-6).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The medical evidence supports a finding of disability. (Brief, p. 5).

(2) The ALJ's finding of plaintiff's residual functional capacity was improper and inconsistent with the medical evidence in the record. (Brief, p. 6).

(3) The ALJ failed to consider the side effects of plaintiff's medications and failed to consider plaintiff's psychiatric illness. (Brief, p. 6).

(4) The ALJ ignored the opinions of plaintiff's treating physicians. (Brief, p. 7).

(5) The ALJ failed to consider plaintiff's non-exertional impairments and failed to use a vocational expert.  (Brief, p. 9).

The defendant argues that Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

## FACTS

### A.  Non-Medical Evidence and Testimony:

Plaintiff, who was thirty-nine years old at the time of the ALJ's hearing, has a Bachelor of Science degree in electrical technology from Rochester Institute of Technology. (T. 226).  Plaintiff worked as an electrical technician between 1994 and 1998, and held other positions as a test engineer between 1998 and 2002. (T. 82-85, 94-100).  Plaintiff stopped full-time work during February of 2002 (T. 55), but had two short-term jobs during late 2002 and mid-2003. (T. 86-93).

In a form completed during October of 2003, plaintiff claimed that he could not work because of anxiety, panic attacks, depression, seizures, post-traumatic stress disorder, and fatigue. (T. 73).  During his testimony at the ALJ hearing, plaintiff stated that the side effects from the several medications he is taking make him sleepy, groggy, dizzy, light-headed, and fatigued.  (T. 231-33).  Plaintiff also stated that the

medication he uses makes him confused.  (T. 233).  Plaintiff testified that he is able to drive an automobile to Scranton, Pennsylvania about one hour from his house, is able to do grocery shopping, work on hobbies, take care of his personal hygiene, and do household chores. (T. 235-41, 102a, 104, 140).

**B.  Medical Evidence:**

Plaintiff has a history of mental problems for which he was being treated during the mid-1990's by a psychiatrist, Dr. Blumenthal. (T. 145).  After Dr. Blumenthal retired, plaintiff began treatment with psychiatrist, Dr. Mark Simko. (T. 202).  The record contains notes from Dr. Simko between August 4, 1998 (T. 202) and July 31, 2003 (T. 180).  Plaintiff first visited Dr. Simko during the summer and fall of 1998 (T. 200-205), and then did not see Dr. Simko until July of 2001 (T. 196).

After July of 2001, plaintiff saw Dr. Simko every two or three months during 2001, 2002, and 2003. (T. 180-195).  During 2001, Dr. Simko's notes state that plaintiff was on several medications (Depakote, Risperdal, Buspar).  In one section of the report, the doctor notes that he does not believe that the plaintiff's "emotional lability" was due to a medication failure. (T. 1940.  Dr. Simko's notes then indicate **_no_** side effects from the "current regimen." (T. 194-195a).  The doctor's recommendation was to "maintain" the medications. (T. 194).  There is no indication that plaintiff was experiencing fatigue, dizziness, or grogginess. (T. 194-195a).  Dr. Simko's notes from 2002 are similar and do not show changes to plaintiff's medications based on side effects such as fatigue, dizziness, or being groggy. (T. 187-193).

Dr. Simko's notes from 2003 are almost exactly the same as the previous two

3

years, and do not report any side effects from plaintiff's medications or "patient concerns regarding current regimen." (T. 180-186). Dr. Simko usually wrote the word "none" in response to whether plaintiff was experiencing side effects. In response to the category of "Rationale for recommended changes in medication regimen", Dr. Simko often stated that there were no changes necessary or sometimes made reference to sleep medication. In one entry during May of 2003, Dr. Simko wrote that plaintiff " . . . has had no daytime sedation . . . ." (T. 182).

Plaintiff has also been treated by Dr. Alan Miller who was his primary care physician. (T. 76, 145-146, 211-214, 207-208). Dr. Miller's notes from August and July of 2001, diagnose plaintiff with anxiety neurosis and depression. (T. 146). In July of 2001, Dr. Miller's notes indicate that plaintiff is "doing reasonably well" on his medications and that plaintiff was under Dr. Blumenthal's care for plaintiff's psychiatric problems. (T. 145). Dr. Miller's notes from 2003 and 2004 indicate that plaintiff reported that his psychiatric medications were slowing him down. (T. 212-14).

Plaintiff discussed disability with Dr. Miller. *Id.* Dr. Miller's initial response to plaintiff's questions regarding disability was that Dr. Miller believed plaintiff should be working and specifically stated that "***I would not support a disability request at this point***." (T. 214)(emphasis added). Dr. Miller's notes state in March 2004 that he had not seen plaintiff in seven months and plaintiff was attending a mental health clinic for his psychiatric care, but that plaintiff stated he "[felt] well from a psychiatric standpoint." (T. 213).

Two months later during May of 2004, plaintiff requested that Dr. Miller complete some forms sent to the doctor by plaintiff's attorney. (T. 212). Plaintiff again told Dr. Miller that he could not work because his medications made him fatigued. (T. 212). Dr. Miller "strongly advised" plaintiff "***to have these papers sent to his psychiatrist as these [sic] would essentially be a psychiatric disability.***" (T. 212)(emphasis added). Dr. Miller then stated in his report that he would "fill out the papers at [sic] the best of his ability." (T. 212). In his notes, Dr. Miller did state that the medications "certainly could be contributing to severe fatigue." (T. 212). The very next day, Dr. Miller completed the form sent to him by plaintiff's counsel which indicated plaintiff's current diagnosis to be anxiety disorder and depression (T. 207), and answered "no" to the question of whether plaintiff could work eight hours per day for a full work week "in light of the above diagnosis and symptoms." (T. 208).

Plaintiff was examined consultatively by Dr. John Cusick on December 22, 2003. (T. 111-15). Dr. Cusick found that plaintiff did not have any physical impairments, and his examination was essentially normal. (T. 112-14). Dr. Cusick found no limitations on plaintiff's physical abilities, except for the possibility that plaintiff's "seizure disorder" might cause a sudden loss of consciousness which might be hazardous to plaintiff or others. (T. 114). Although plaintiff apparently mentioned to Dr. Cusick that he had a seizure disorder, Dr. Cusick stated that plaintiff's comments about the seizure disorder were confusing and that plaintiff last had a seizure in the year 2000. (T. 111). The medical records of plaintiff's treating doctors do not appear to refer to any seizure disorder, but rather refer to a history of alcohol

5

dependence, panic disorder, bipolar disorder, and post-traumatic stress disorder.  (T. 153, 169, 170, 172-75, 180-202).

On the same day that plaintiff was examined by Dr. John Cusick, plaintiff underwent a consultative mental examination by psychologist Alan Dubro.  (T. 116-120).  Dr. Dubro recorded plaintiff's multitude of symptoms (T. 117), and his history, and then made many findings about plaintiff's attention and concentration, memory, skills, cognitive functioning, insight and judgment.  (T. 118, 119).  Dr. Dubro concluded that plaintiff

> can attend and concentrate, but reports that in stressful situations he is easily distracted.  He can read, write, and perform simple calculations. . . . He appears to be capable of following, understanding, and remembering simple directions.  He appears to be capable of performing simple and complex tasks independently; reportedly under the pressure of his job setting, he was easily distracted . . . .  He appears to be capable of maintaining attention and concentration for tasks but is easily distracted when stressed and does not appear capable of regularly attending to a routine and maintaining a schedule.  He appears to be capable of making appropriate decisions.  He appears to be capable of learning new tasks with extended time . . . He has significant difficulty dealing with stress."

(T. 119).  Dr. Dubro concluded that plaintiff should continue with his psychiatric treatment and diagnosed bipolar disorder and alcohol dependence in early remission. (T. 119).

Non-examining physician, Dr. Richard Altmansberger, performed a mental residual functional capacity assessment. (T. 127-29).  He found that plaintiff had bipolar disorder and alcohol dependence in early remission. (T. 127, 128).  Dr. Altmansberger found that plaintiff was moderately limited in eight categories of mental function and not significantly limited in twelve categories of mental function.

6

(T. 127).  He found that plaintiff's impairment did not meet the severity any of the Social Security Listed Impairments in Appendix 1 of the Regulations.  (T. 128).  He also performed a Psychiatric Review Technique[1] on January 17, 2004. (T. 131-43). He analyzed plaintiff's symptoms under section 12.04 (affective disorders) and 12.09 (substance addiction disorders)(T. 131). *See* 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04, 12.09.  Although Dr. Altmansberger found that plaintiff had evidence of medically determinable impairments under both sections, (T. 134, 139), he also found that plaintiff's functional limitations due to these impairments were not sufficient to meet the severity of either listed impairment. (T. 141-42).

## DISCUSSION

**1.    Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless

---

[1] The "Psychiatric Review Technique" is a form used to determine whether the severity of plaintiff's psychiatric impairment meets or equals any of the Listed Impairments of Appendix 1 of the Social Security Regulations. 20 C.F.R. Part 404, Subpt. P, App. 1.  The form contains questions relating to the presence of the symptoms required for various listed mental impairments.

of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence

8

supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)

(citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may

not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards

were applied, even if the decision appears to be supported by substantial evidence.

*Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors

justifying his findings with sufficient specificity to allow a court to determine whether

substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d

Cir. 1984).  A court's factual review of the Commissioner's final  decision is limited

to the determination of whether there is substantial evidence in the record to support

the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Williams on behalf of*

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be

"more than a scintilla" of evidence scattered throughout the administrative record.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v.*

*NLRB*, 197 U.S. 229 (1938)).

   "To determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence

must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.

However, a reviewing court cannot substitute its interpretation of the administrative

record for that of the Commissioner if the record contains substantial support for the

ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

**3.   Treating Physician**

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is ***not*** required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

If the treating physician's opinion is not given controlling weight, the ALJ must assess the following factors: the length of the treatment relationship; the frequency of examination for the condition in question; the medical evidence supporting the opinion; the consistency of the opinion with the record as a whole; the qualifications of the treating physician; and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6).  Failure to follow the proper standard is a ground for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998)(citation omitted).

In this case, plaintiff argues that the ALJ improperly rejected the opinions of Dr.

Simko and Dr. Miller and relied "solely" on the examining consultant for the Social Security Administration. (Brief at p.8). This court does not agree with plaintiff's argument. The court first notes that the ALJ did **not** reject Dr. Simko's opinion. Although plaintiff's counsel states that the ALJ rejected Dr. Simko's opinion, counsel does not cite to either the record or to the ALJ's opinion in support of this argument. In fact, the ALJ stated that he ***was relying upon Dr. Simko because he was a psychiatrist***. (T. 17, 20).

The ALJ gave a detailed summary of the medical evidence in this case including the opinions of plaintiff's physicians. (T. 16-20). The ALJ ***did reject*** Dr. Miller's conclusion, asserting plaintiff's inability to work. The ALJ's decision to reject the Dr. Alan Miller's conclusory assertion is supported by substantial evidence in the record. As stated in the ALJ's decision, Dr. Miller specifically stated in July of 2003 that he would ***not*** support plaintiff's disability request, (T. 214), and further stated that a psychiatrist should complete the form sent to Dr. Miller by plaintiff's attorney in May of 2004. (T. 212).

Plaintiff specifically visited Dr. Miller on May 12, 2004 to "discuss" the letter from plaintiff's attorney and plaintiff's disability. Dr. Miller's notes clearly indicate that he was hesitant in completing the form, but that plaintiff questioned him about it "numerous times," and Dr. Miller finally stated that he would complete it to the best of his ability. (T. 212). Although Dr. Miller referenced the side-effects of plaintiff's medications, he specifically stated that they "could" cause fatigue. (T. 212). The very next day, May 13, 2004, Dr. Miller completed the form and answered "no" to the

11

question of whether plaintiff was able to work eight hours a day for five days a week, despite Dr. Miller's statements in mid-2003, that plaintiff should continue working and was ***not disabled***, and his statement one day prior to completing a form that a psychiatrist should complete any disability form since plaintiff has psychiatric problems.

The ALJ was ***completely justified*** in rejecting the Dr. Miller's conclusory statement in a form that Dr. Miller was clearly hesitant to complete, that plaintiff could not work a full week.  Plaintiff's other treating physicians, Dr. Tinio, from the Addiction Center of Broome County, (T. 168-171), and Dr. Toraty of the Broome County Community Mental Health Services, have not rendered opinions about plaintiff's ability to work (T. 172, 175).  They did state, however, during August of 2003, that plaintiff would like to have steady employment.  (T. 172).  Contrary to plaintiff's argument, plaintiff's treating ***psychiatrist***, Dr. Simko, has ***not*** rendered an opinion about plaintiff's inability to perform substantial gainful employment, and Dr. Simko's records do ***not*** support plaintiff's claims that he has extreme side effects from his medication.  (T. 180-202).  The record contains substantial evidence to support the ALJ's conclusions rejecting the opinion of Dr. Alan Miller, and contrary to counsel's argument, the ALJ did ***not*** completely disregard or reject Dr. Simko's opinions.

**4.    Residual Functional Capacity**

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other

limitations. 20 C.F.R §§ 404.1545; 416.945. *See Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

In this case, plaintiff argues that the ALJ's residual functional capacity finding is inconsistent with the medical evidence (Brief, p. 6), and that the ALJ did not consider the side effects of plaintiff's medications in determining that plaintiff could perform simple, repetitive work at all exertional levels, on a sustained basis in a regular work setting (T. 22). Plaintiff argues that due to his medications, he experienced such fatigue that he could not work on a sustained basis, and plaintiff claims that the ALJ did not take this into consideration.

The record does ***not*** show that plaintiff made complaints to his treating psychiatrist about ***any side effects*** from his medications (T. 180-202), and there are notations in the records that plaintiff was "doing fine" (T. 180, 145). The ALJ made a specific finding that plaintiff was exaggerating his symptoms (T. 21), and the record supports that conclusion. In addition, Dr. Simko's notes during the April 15, 2003 visit indicate that plaintiff's mood was good and that he was enthusiastic and had energy. (T. 183, 193, 195a).

Although Dr. Miller stated in his notes of May 12, 2004 that plaintiff stated that his medications made him severely fatigued, and stated that the medications "certainly

could be contributing to severe fatigue", (T. 212), it is clear from Dr. Miller's notes that he was making these conclusions at plaintiff's insistence, and the Dr. Miller believed that any disability determination should have been made by a psychiatrist. (T. 212).  Between September 13, 2001 and April 15, 2003, all Dr. Simko's notes indicate that plaintiff had no side effects or concerns about his medication. (T. 183-195a).  On May 15, 2003, Dr. Simko stated that on plaintiff's current regimen, he had "no daytime sedation." (T. 182).  On June 16 and July 31, 2003,  Dr. Simko reported that plaintiff had ***no side effects or concerns about his "current regimen."*** (T. 180). Plaintiff occasionally reported problems with his sleep for which medication was prescribed. *See e.g.* (T. 184, 185, 187).

## 5.   <u>Vocational Expert</u>

Generally if a plaintiff's non-exertional impairments "significantly limit the range of work" permitted by the plaintiff's exertional limitations, then the ALJ may not use the Medical-Vocational Guidelines (the Grid) exclusively to determine whether plaintiff is disabled. *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986).  If the plaintiff's range of work is significantly limited by his non-exertional impairments, then the ALJ must present the testimony of a VE or other similar evidence regarding the availability of other work in the national economy that plaintiff can perform. *Id.*  A VE may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

Plaintiff in this case argues that the ALJ improperly failed to use a vocational expert. (Brief, p. 9).  The record clearly shows that plaintiff has only mental, non-exertional limitations of anxiety, depression, and bipolar disorder. (T. 153, 170, 172-175, 180-202, 146).  The ALJ states in his decision that "[if] the claimant's non-exertional limitations do not significantly compromise the ability to perform work at all exertional levels, Section 204.00, . . . indicates that a finding of not disabled would be appropriate." (T. 21).

Section 204.00 is the section of the Medical Vocational Guidelines (the Grid) that is used when an individuals physical capacities leave him with the ability to perform heavy or very heavy work. 20 C.F.R. Part 404, Subpt. P., App. 2 § 204.00. The ALJ recognized that the Grid does not direct conclusions of disabled or not disabled if the plaintiff has only ***non-exertional*** limitations. (T. 21).  The court assumes that the ALJ used this section because he found that plaintiff had no exertional limitations.  However, the section that the ALJ cited does not refer to ***mental non-exertional impairments.***

The section states that the ability to perform heavy or very heavy work, and thus, all the exertional categories that involve less capacity, "represents substantial work capacity for jobs at all skill and physical demand levels." *Id.*  The section further provides that individuals with this capacity will generally not have a severe impairment or be able to perform their past work, which would have already provided a basis for denial of benefits at an earlier step of the five-step analysis. *Id.*  The section

15

then states "*[e]nvironmental restrictions* ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work . . . ." *Id.*  This section then concludes, therefore, that an impairment that does not preclude heavy or very heavy work "would ordinarily not be the primary reason for unemployment and generally is sufficient for a finding of not disabled . . . ." *Id.* (emphasis added).

This section specifically refers only to "environmental limitations," which is another category of non-exertional limitation.  Nowhere in the section does it state that an individual with ***mental limitations*** who can perform this exertional category of work should be considered not disabled.  The ALJ may be attempting to state that plaintiff's non-exertional impairments do not significantly limit his ability to perform work in the national economy, and that plaintiff would be capable of "making an adjustment" to work, however, this conclusion is not clear from the record.

Plaintiff in this case does have severe mental impairments.  Consultative psychologist Dr. Alan Dubro stated that plaintiff was capable of many functions, however, he "does not appear capable of regularly attending to a routine and maintaining a schedule." (T. 119).  The ALJ dismisses this conclusion by stating that although plaintiff did have difficulty with "concentration, persistence, and pace, he could perform a variety of other functions. (T. 20).  Plaintiff claims that he does not have the ability to work at a regular pace.  This is supported by the evidence.  Dr. Dubro also stated that plaintiff had "significant difficulty dealing with stress." (T. 119).  The ALJ does not mention that part of Dr. Dubro's report.

16

It may very well be that plaintiff can perform other work in the national economy, but the ALJ's conclusion to this effect is not properly supported. The ALJ is assuming that plaintiff's problems with pace will not significantly limit his ability to perform other work, but there is nothing in the record to support this conclusion. It is true that plaintiff did attempt to work, and the ALJ considered these attempts unsuccessful work attempts. It would be important to explore the reasons that these work attempts were unsuccessful, and this court believes that testimony from a vocational expert is necessary to take into account plaintiff's psychiatric conditions, even though those conditions appear to be well controlled with medication, and have been well controlled for many years.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED**, and this case **REMANDED** to the Commissioner for further proceedings consistent with this recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 27, 2007

_____

Hon. Gustave J. DiBianco
U.S. Magistrate Judge